# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **TERESA ROBINSON,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| **vs.** | ) **Civil Action No. 6:15-CV-400-CLS** |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Teresa Robinson, commenced this action on March 8, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the assessment of the consultative psychological examiner, improperly evaluated her credibility, and failed to find her disabled based on limitations on her concentration, persistence, and pace.

Social Security regulations provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Alan Blotcky, a clinical psychologist, examined claimant on January 2, 2013, at the request of her attorney. Claimant reported experiencing lengthy episodes of major depression that included morbid, aggressive auditory hallucinations. She had been treated with Prozac in the past but had not been hospitalized and had not

attempted suicide.  She reported spending most of her time watching television and listening to music.  She had a driver's license and a car, but she did not cook or do other housework.  Her social activities included seeing her son and talking to one or two friends on the phone.

Upon examination, Dr. Blotcky found claimant to be dressed in appropriate but disheveled attire.  Her clothes were old and ill-fitting, and she did not wear make-up or jewelry.  Claimant complained of a headache and back pain.  She demonstrated logical and orderly thinking, normal speech, good abstract thinking, and intact but vague memory functioning.  Her affect was depressed, agitated, and crying.  She heard vague voices, and her judgment and insight were impaired by her psychosis.  She received a score of 42 on the Beck Depression Inventory, indicating severe depression.

Dr. Blotcky assessed claimant as experiencing major depressive disorder, recurrent, severe, with psychosis, and he assigned a GAF score of 40, indicating some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  He recommended that claimant be involved in regular psychiatric and psychological treatment with a combination of medication and individual counseling, in addition to medical treatment for her physical ailments.  Dr. Blotcky concluded that claimant's

prognosis was "very poor because of her recurrent affective illness with psychosis," and that claimant would not be able to manage her financial affairs independently.[1]

Dr. Blotcky also completed a "Medical Source Opinion Form (Mental)" on February 6, 2013. He indicated that claimant would experience extreme limitations in her ability to respond appropriately to customers or other members of the general public and her ability to maintain attention, concentration, or pace for periods of at least two hours. She would experience marked limitations in her abilities to respond appropriately to co-workers and supervisors, deal with changes in a routine work setting, respond to customary work pressures, maintain social functioning, and maintain activities of daily living. She would experience moderate limitations in her abilities to: use judgment in simple, one-or-two-step, work-related decisions; use judgment in detailed or complex work-related decisions; and understand, remember, and carry out simple or complex instructions. Dr. Blotcky again indicated that claimant would not be able to manage her benefits in her own best interest.[2]

The ALJ afforded Dr. Blotcky's opinion only little weight,

as the claimant underwent the examination that formed the basis for this opinion not in an attempt to seek treatment for symptoms, but rather, as part of a referral through her attorney in an effort to generate evidence for this claim. Further, it is assumed that the doctor was paid for the report. Although such evidence is certainly legitimate and deserves due

---

[1] Tr. 369-71.

[2] Tr. 372-73.

4

consideration, the context in which it was produced cannot be entirely ignored.  Additionally, Dr. Blotcky provided very little explanation of the evidence he relied upon in forming his opinion, including whether or not he performed a review of any records from other medical sources.[3]

Claimant takes issue with the ALJ's decision to limit the weight she afforded Dr. Blotcky's assessment because the assessment was obtained at the request of, and presumably was paid for by, claimant's attorney.  It is of course true, as claimant points out, that the Commissioner also often orders her own consultative examinations but does not automatically reject the assessments that follow from those examinations as being biased.  Even so, Social Security regulations specifically state that the nature of the relationship between the claimant and the medical provider offering an opinion should be considered.  *See* 20 C.F.R. § 404.1527(c).

Moreover, the ALJ also reasoned that Dr. Blotcky did not adequately explain the evidence he relied upon to form his opinions.  That also is a permissible consideration under the regulations.  *See id.*

Finally, and importantly, there is substantial evidence in the record to support the ALJ's finding that claimant was not as limited by her mental condition as Dr. Blotcky indicated.  Based on claimant's treatment records from Northwest Alabama Mental Health Center, the ALJ concluded that claimant's major depressive disorder was "not so severe as to limit her to an extent to which she would be unable to

---

[3] Tr. 28.

perform basic work activities."[4]  Those records indicated that when claimant attended

regular therapy sessions beginning in November 2011, her condition stabilized.

> However, in early 2013, it was noted that she had been non-compliant
> with treatment, as she had missed four out of seven appointments and
> her case had been closed.  Nonetheless, she resumed treatment and
> underwent a psychiatric evaluation on January 25, 2013.  The
> psychiatrist observed the claimant to be cooperative, appropriately
> dressed, she made good eye contact, and had no problems
> communicating.  Her memory and organization of thoughts were also
> normal, her insight and judgment were fair, and he estimated her
> intelligence to be Average.  The claimant was compliant with treatment,
> she attended regular psychotherapy sessions, and her condition
> improved.  It was noted on April 25, 2013 that her goal and objective of
> managing her frustration in a positive manner had been met . . . .  Thus,
> the undersigned concludes that the claimant's mental impairment is
> stable and the severity of this condition would not preclude her from
> performing work activity within the above residual functional capacity
> [of a limited range of light work].[5]

Additionally, claimant did not report any auditory or visual hallucinations during an

intake exam at Northwest Alabama Mental Health on January 24, 2013, just a few

weeks after Dr. Blotckly's examination, and approximately one week before he

completed his assessment of disabling functional limitations.[6]  For all of these

reasons, the court concludes that the ALJ properly considered Dr. Blotcky's

assessment.

    Claimant also asserts that the ALJ improperly relied upon her treatment history

---

[4] Tr. 26.

[5] *Id.* (alteration supplied, citation to the record omitted).

[6] Tr. 404.

in evaluating the credibility of her subjective complaints.  Applying the Eleventh Circuit's standard for evaluating subjective complaints of pain,[7] the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.[8]  One factor that led the ALJ to that conclusion was "evidence that the claimant has not been entirely compliant with treatment, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application."[9]  Specifically, the ALJ noted that claimant told her treating nurse practitioner that she had "weaned herself off morphine," which the ALJ found to be "indicative that the claimant's pain was no longer bothersome or severe [enough] to require ongoing treatment."[10]  The ALJ also noted that claimant began to experience psychological problems when she missed four out of seven

---

[7] *See Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)) (holding that, to demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'").

[8] Tr. 24.  *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").

[9] Tr. 27.

[10] Tr. 25 (alteration supplied).  *See also* Tr. 393.

7

appointments with her therapist in early 2013, but that her condition improved when she returned to therapy.[11]

Claimant contends that it was unfair for the ALJ to count her noncompliance with treatment against her because she had good reasons for not complying. Claimant asserts that she stopped taking morphine both because she lost her health insurance, and because it made her tired. It is true that "poverty excuses [a claimant's] noncompliance" with medical treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (alteration supplied). Thus, "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment *and can find no way to obtain it*, the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)) (emphasis supplied). Here, there is no evidence that claimant attempted to find an alternative source for her morphine after she lost her health insurance. There is, on the other hand, conflicting evidence that claimant chose to discontinue the morphine because of its side effects, not because of her inability to afford the medication. Claimant testified to experiencing fatigue as a side effect of morphine during the administrative hearing,[12] but she never mentioned it to any of her medical providers. Thus, it is unclear exactly what claimant's reasons

---

[11] Tr. 26.
[12] Tr. 59.

were for ceasing the medication. Claimant herself points out, however, that she continued to take her other medications, including blood pressure medication, Prozac, Symbicort, thyroid medication, Baclafen, and Topamax.[13] Claimant does not explain why she could continue to afford all of those medications, but not morphine.

Claimant also suggests that the ALJ should have considered her lack of transportation as a reason that she missed her therapy appointments, but there simply is not any evidence that claimant missed appointments for that reason. Claimant did not testify about missing appointments due to lack of transportation, and there is nothing in the records from Northwest Alabama Mental Health to suggest that transportation was a problem. The only mention of lack of transportation in the record is claimant's hearing testimony that she could not take advantage of the free vocational rehabilitation services offered by the State of Alabama because she had no transportation.[14] She made that statement only after the ALJ challenged her original assertion that she could not afford vocational rehabilitation by reminding claimant that the services were free.[15] Additionally, claimant did not explain why she was unable to find transportation to vocational rehabilitation (or psychological therapy) when she was regularly attending her other medical appointments.

---

[13] Doc. no. 11 (claimant's brief), at 14-15.

[14] Tr. 42.

[15] *Id.*

9

In summary, there was conflicting information in the record about why claimant was not fully compliant with her prescribed treatment.  The ALJ was entitled to rely upon those inconsistencies in evaluating claimant's credibility.  Moreover, and importantly, claimant's noncompliance with treatment was not the only reason the ALJ discredited claimant's subjective complaints.  The ALJ also concluded that claimant's allegations of disabling limitations were not supported by the medical evidence of record, and that the treatment claimant received "has essentially been routine and conservative in nature and has generally been successful in controlling her symptoms."[16]  Finally, the ALJ noted that claimant's sporadic work history prior to her alleged onset date "does not help [her] credibility."[17]  Those were permissible considerations, *see* 20 C.F.R. § 404.1529(c)(3), and the ALJ's conclusions are supported by substantial evidence.

Claimant *may* assert a third argument in her brief.  She states:

> The claimant regularly sees Dr. Ali for back and neck pain.  He calls her pain cervical bronchial syndrome. . . . She has headaches every day.  It is like "a headache where you get a headache."  She has stabbing pains in her eyes.  They last for hours. . . . She has to go to a cold dark room and put an ice pack on her head. . . . Her mental and physical impairments in combination substantially affect the claimant's concentration, persistence, and pace.  The ALJ's decision that she is not disabled is not supported by substantial evidence.[18]

---

[16] Tr. 25.

[17] Tr. 27 (alteration supplied).

[18] Doc. no. 11 (claimant's brief), at 14 (citations to the record omitted).

10

It is difficult to interpret this perfunctory argument, or to determine the basis for it, but the court will presume that claimant intended to argue that the ALJ should have found her disabled because of impairments in her concentration, persistence, and pace resulting from her headaches.  Claimant relies only upon her own testimony to support her argument; she has not pointed to any evidence in the record that would support greater limitations on her concentration, persistence, or pace than those imposed by the ALJ:

> [Claimant] is able to understand, remember, and carry out simple, routine, and repetitive tasks.  She can concentrate and remain on task for two hours at a time sufficient to complete an eight-hour workday.  Her judgment would be limited to simple work-related decisions.  She would be limited to casual, non-intensive interaction with coworkers and the general public.  She would be able to deal with infrequent and well explained changes in the work setting.  She would be limited to performing simple routine and repetitive tasks.[19]

In conclusion, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 14th day of January, 2016.

United States District Judge

---

[19] Tr. 23 (alteration supplied).

11